UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD KELLEY,

    Plaintiff,

v.                                                                                          Case No. 8:19-cv-1409-T-02AAS

SUN COMMUNITIES, INC.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT SUN COMMUNITIES, INC.'S MOTION FOR SUMMARY JUDGMENT

Richard Kelley tripped and fell over an uneven sidewalk joint while walking his dog around the Royal Palm Village community. Kelley then filed this premises liability action asserting the property owner, Sun Communities, Inc. ("the Community"), was negligent for failing to maintain the sidewalk in a safe condition. Dkt. 1-1. Now before the Court is the Community's Motion for Summary Judgment, Dkt. 19, along with Kelley's response, Dkt. 22, and the Community's reply, Dkt. 24. Having carefully considered the parties' submissions, the Court grants the Motion. The Court finds that the uneven sidewalk joint was not a dangerous condition. Therefore, the Community did not breach its duty to maintain the premises in a reasonably safe condition.

## BACKGROUND

Royal Palm Village is a 55-and-over mobile home community in Haines City, Florida. Dkt. 20 (Kelley Depo.) at 23, 37–38. At the time of his fall, Kelley had lived in Royal Palm for eight years. *Id.* at 38. Every day Kelley would walk his dog around the neighborhood. Each time he would take the same route: down the 20 yards of sidewalk in front of his home, then across a wooden footbridge to an open field. *Id.* at 42–43. Kelley would then turn around and walk the same route back home. *Id.* at 43–45.

Kelley was familiar with the grounds at Royal Palm, having walked the entire property during his eight years there. *Id.* at 38. He had never tripped during any of his previous walks. *Id.* at 48. But he believed the sidewalk needed repair. *Id.* at 45. In particular, one joint between two of the concrete slabs was uneven and slightly raised. *Id.*

Kelley notified the Community's maintenance technicians of his concerns over the sidewalk's condition. *Id.* at 46–47. But he did so only in passing conversations. He never filed a formal complaint with the Community, and to his knowledge no one else complained about the condition of the sidewalk. *Id.* at 47–48. The photo below shows the uneven sidewalk joint Kelley complained of, which joint was apparently painted after Kelley's mishap:



Dkt. 20 at 119.

On a clear afternoon in May 2017, Kelley took his dog for a walk along their usual route. *Id.* at 37–38. Kelley made it down the sidewalk and across the bridge to the field with no issue. *Id.* at 44–45. On the way back, Kelley safely crossed the footbridge. *Id.* at 45. But as he walked down the final stretch of the sidewalk, Kelley said he suffered a "lapse of concentration" and tripped over the uneven joint depicted above. *Id.* at 59. Kelley fell and injured his left knee, requiring surgery and physical therapy. *Id.* at 70.

Kelley sued the Community in Florida state court, asserting a single count of negligence based on the Community's failure to maintain the sidewalk in a

3

reasonably safe condition. Dkt. 1-1. The Community timely removed to this Court based on diversity of citizenship. Dkt. 1. The Community now moves for summary judgment, arguing that the uneven sidewalk joint was an open and obvious condition—the kind that will not give rise to liability. Dkt. 19.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When deciding whether a reasonable jury could return such a verdict, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

To sustain a premises liability action based on a landowner's negligence, a plaintiff must prove the standard elements of a negligence claim: duty, breach of duty, proximate causation, and damages—with the added element that the landowner had possession/control of the premises when the alleged injury occurred. *See Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001).

In Florida, the duty a landowner owes depends on the plaintiff's relationship to the property. *See Seaberg v. Steak N' Shake Operations, Inc.*, 154 F. Supp. 3d 1294, 1299 (M.D. Fla. 2015). A landowner owes an invitee to the premises two distinct duties. The landowner must (1) "warn [the invitee] of concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care"; and (2) "use ordinary care to maintain its premises in a reasonably safe condition." *Rocamonde v. Marshalls of Ma, Inc.*, 56 So. 3d 863, 865 (Fla. 3d DCA 2011). These duties are independent of one another, and the breach of either duty will subject the landowner to liability. *See id.*

The Community admits that it owed Kelley both duties but contends it is entitled to summary judgment because it did not breach either duty as a matter of law. The Community asserts that the uneven sidewalk joint was an open and obvious condition—relieving any duty to warn—and was not inherently dangerous—meaning it did not constitute a violation of the duty to maintain the premises in a reasonably safe condition. Dkt. 19 at 2, 8–9.

Indeed, the Community had no duty to warn Kelley. A landowner has no duty to warn when a potentially dangerous condition is open and obvious, or when the plaintiff had actual knowledge of the condition. *E.g. City of Melbourne v. Dunn*, 841 So. 2d 504, 505 (Fla. 5th DCA 2003); *Knight v. Waltman*, 774 So. 2d

731, 733–34 (Fla. 2d DCA 2000). The sidewalk joint Kelley tripped over was not concealed, and Kelley was aware of it, having successfully navigated it countless times before. *See* Dkt. 20 at 48.

But while an obvious condition may discharge a landowner's duty to warn an invitee, "it does not discharge the landowner's duty to maintain the property in a reasonably safe condition." *Marriott Int'l, Inc. v. Perez–Melendez*, 855 So. 2d 624, 631 (Fla. 5th DCA 2003). The landowner still has an obligation to mitigate potential dangers on the premises. *Arnoul v. Busch Ent. Corp.*, No. 07-cv-1490T-24-TGW, 2008 WL 4525106, at *2 (M.D. Fla. Oct. 6, 2008). For example, a landowner must repair broken handrails on stairways or remove slippery substances from floors and other walking surfaces. *Id.* (citing *Hancock v. Dep't of Corr.*, 585 So. 2d 1068 (Fla. 1st DCA 1991) and *Taylor v. Tolbert Enters., Inc.*, 439 So. 2d 991 (Fla. 1st DCA 1983)).

When an injured plaintiff alleges that the landowner breached the duty to keep the premises in a reasonably safe condition, "an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition would cause injury despite the fact it was open and obvious." *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 578 (Fla. 5th DCA 2005). But some open and obvious conditions are such that they will not constitute a failure to maintain the premises in a reasonably safe

condition as a matter of law. *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012). Two types of obvious conditions will not give rise to liability based on a failure to maintain the premises: (1) those conditions that are "open and obvious and not inherently dangerous"; or (2) those conditions that may be dangerous but are "so open and obvious that an invitee may be reasonably expected to discover them to protect himself." *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1133 (Fla. 1st DCA 2017) (quoting *Dampier*, 82 So. 3d at 206).

  A prime example of the first type of condition is a difference in floor elevation. The Florida Supreme Court has long held that a difference in height between floors on the same story of a building or residence is not an inherently dangerous condition and will not, by itself, constitute a failure to use due care for the safety of persons invited to the premises. *See, e.g.*, *Schoen v. Gilbert*, 436 So. 2d 75, 76 (Fla. 1983) (holding that six-inch drop between foyer and living room was not inherently dangerous condition); *Hoag v. Moeller*, 82 So. 2d 138, 139 (Fla. 1955) (holding that three-and-a-half to four-inch drop between living room and dining room was not dangerous condition); *Bowles v. Elkes Pontiac Co.*, 63 So. 2d 769, 772 (Fla. 1952) (holding that three-inch drop-off between platform and showroom floor was not dangerous condition).

  That a mere change in floor height will not subject the property owner to liability is premised on a few factors. First, step-downs and changes in floor level

are commonplace features in buildings and are generally known to all who encounter them. *Schoen*, 436 So. 2d at 76 (citing *Hoag*, 82 So. 2d at 139). Second, invitees have a duty to use ordinary care for their own safety and "to look . . . where [they are] going." *Hoag*, 82 So. 2d at 139 (quoting *Bowles*, 63 So. 2d at 772). Thus, no invitee entering a building or residence "can assume that the floors of all rooms in the same story have the same level, blindly travel on the presumption, disregard his own safety, stumble, fall, and recover." *Schoen*, 436 So. 2d at 76 (quoting *Hoag*, 82 So. 2d at 139). This is true even when the premises are dimly lit and the invitee is unfamiliar with them, *id.*, or the area near the floor change is overcrowded and thus partly obstructed, *Casby v. Flint*, 520 So. 2d 281, 282 (Fla. 1988) ("Multiple floor levels in a dimly lit or overcrowded room are not inherently dangerous conditions.").

Florida's intermediate appellate courts have also found other conditions are not inherently dangerous. For example, one court held that the uneven juncture between the cement and asphalt in a gas station parking lot was "so common and so ordinarily innocuous" that it was not a dangerous condition. *See Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990). Others have held that the step-down from a sidewalk curb to a parking lot or street is not inherently dangerous. *Gorin v. City of St. Augustine*, 595 So. 2d 1062, 1063 (Fla. 5th DCA 1992); *Aventura Mall Venture v. Olson*, 561 So. 2d 319, 321 (Fla.

8

3d DCA 1990). Yet another has held that "protruding, uneven bricks" placed around the base of a tree in an area where children often played was not a dangerous condition that required a landowner to take corrective or precautionary measures. *K.G. ex rel. Grajeda v. Winter Springs Cmty. Evangelical Congregational Church*, 509 So. 2d 384, 385 (Fla. 5th DCA 1987).

Like these examples and those provided by the Florida Supreme Court, the uneven sidewalk here was not a dangerous condition. While not a construction feature like the difference in floor height within a building or the step-down from a street curb, uneven sidewalks are just as commonplace—any stretch of sidewalk is bound to have flaws and uneven spots caused by tree roots or myriad other reasons. The sidewalk joint here was also objectively less dangerous than the other examples cited above. From the photo of the sidewalk, one can see the difference in slab height was only a few inches, not a six-inch drop like in *Schoen* or *Olson*. Moreover, Kelley knew this part of the sidewalk was uneven and admitted that his own lapse in concentration was the sole reason he fell. Considering all of this, there is no basis to find that the Community breached its duty to maintain the premises.

Kelley resists this conclusion by insisting that his knowledge of the sidewalk's condition should not dispose of his claim but should raise an issue of comparative fault for a jury to resolve. Dkt. 22 at 4. This argument misses the

9

point. It assumes—incorrectly—that the sidewalk was a dangerous condition. And Kelley does not distinguish, much less address, any of the cases involving a change in floor level or the other conditions courts have found to be harmless.

That said, several opinions of Florida's District Courts of Appeal—none of which Kelley cites—have held that a cracked or deteriorated sidewalk can constitute a dangerous condition or can at least raise a factual dispute over whether the landowner breached its duty to maintain the premises. *See, e.g.*, *Middleton v. Don Asher & Assocs., Inc.*, 262 So. 3d 870 (Fla. 5th DCA 2019); *Leon v. Pena*, 274 So. 3d 410 (Fla. 4th DCA 2019); *Lotto v. Point E. Two Condo. Corp., Inc.*, 702 So. 2d 1361 (Fla. 3d DCA 1997). These cases, however, are distinguishable. In each of these cases, the courts described the sidewalk as severely cracked, deteriorated, or otherwise in a state of disrepair. *Middleton*, 262 So. 3d at 873; *Leon*, 274 So. 3d at 413; *Lotto*, 702 So. 2d at 1361. Based on evidence presented regarding the condition of the sidewalks, including photographs of the sidewalks in *Lotto* and *Middleton*, the courts found that issues of fact remained over whether the landowners could have expected that residents would continue to use the sidewalk, encounter the cracked and uneven portions, and suffer harm as a result. *Middleton*, 262 So. 3d at 873; *Leon*, 274 So. 3d at 413; *Lotto*, 702 So. 2d at 1362.

But this is not a case of a dilapidated or deteriorated sidewalk. The photograph in the record makes this clear. Aside from one uneven seam, the

sidewalk appears to be an otherwise pristine walking surface and not unreasonably hazardous.

A more similar case is *Kersul v. Boca Raton Community Hospital, Inc.*, 711 So. 2d 234, 234 (Fla. 4th DCA 1998) (per curiam). But it too is distinguishable. There, the plaintiff tripped and fell over an uneven sidewalk joint on the hospital premises. The trial court entered judgment for the landlord. The appellate court reversed finding there was conflicting evidence over whether the danger posed by the uneven sidewalk was "open and obvious." *Id.* There is no such conflict in this case.

In sum, the Community did not breach any duty it owed Kelley. The section of the sidewalk Kelley tripped over was an open, obvious, and otherwise harmless condition. The law imposes on a landowner the duty to mitigate unreasonable hazards on the property. It does not require the landowner to foreclose all risk that an invitee will injure himself during an inattentive moment. *Arnoul*, 2008 WL 4525106, at *3. The Court likewise will not impose such a burden on the Community.

## **CONCLUSION**

Defendant's Motion for Summary Judgment (Dkt. 19) is **GRANTED.**

**DONE AND ORDERED** at Tampa, Florida, on January 5, 2021.

*/s/ William F. Jung*

11

                                  **WILLIAM F. JUNG**
                                  **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record